**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

| | |
|---|---|
| JONATHAN HENNESSEY, an individual, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 2:20-cv-00834 |
| ) | |
| ICE FLOE, LLC, dba ) | |
| NICHOLS BROTHERS BOAT ) | |
| BUILDERS ) | **FIRST COMPLAINT FOR DAMAGES** |
| ) | |
| Defendant. ) | |
| ) | |
| ) | |

COMES NOW Plaintiff, Jonathan Hennessey, by and through his attorney, and alleges as follows:

## I. INTRODUCTION

1.1 Plaintiff alleges complaints against the defendant, Ice Floe, LLC dba Nichols Brothers Boat Builders ("Defendant"), for discrimination based on sex, discrimination based on sex and sexual orientation pursuant to RCW 49.60; subjecting him to a hostile work environment based on sex and sexual orientation, and retaliated against him for participating in a protected activity pursuant Title VII and RCW 49.60 .

COMPLAINT FOR DAMAGES – Page **1** of **8**

Nolan Lim Law Firm, PS
1111 3rd Ave. Suite 1850
Seattle, WA 98101
Office: (206) 774-8874

## II.   PARTIES

2.1 Plaintiff is an individual residing in Coupeville, WA who was previously employed by Defendant.

2.2 At the time of Plaintiff's constructive discharge, Plaintiff was employed as an Apprentice Outside Machinery Assembler.

2.3 Defendant is incorporated in the state of Washington.

2.4 Defendant's jurisdiction is in Western Washington and the Defendant has availed itself of the benefits and protections of the laws of the State of Washington.

## III.   JURISDICTION AND VENUE

3.1 Jurisdiction and venue are proper as all alleged acts took place in the Western District of Washington.

3.2 On March 5, 2020, Plaintiff through his attorney, received a right to sue letter from the US Equal Employment Opportunity Commission.

## IV.   FACTS

4.1 Plaintiff identifies as a homosexual male.

4.2 Defendant hired and employed Plaintiff on or around June 15, 2016 as a Laborer.

4.3 Plaintiff later transitioned into the position of Apprentice Outside Machinery Assembler, a position Plaintiff held until he was terminated.

4.4 Plaintiff at all times performed the duties of his job in a satisfactory manner.

4.5 Immediately after starting his employment with Defendant, Plaintiff''s coworkers including , Josh Dill (hereinafter referred to as "Mr. Dill"), verbally harassed him based on his sex and sexual orientation.

4.6 From approximately October of 2016 through the end of his employment term, Plaintiff's coworkers would make offensive and disparaging comments about Plaintiff.  Mr. Dill harassed Plaintiff to admit he was gay; berated Plaintiff on an almost daily basis by telling him, "You are a fucking faggot."  Other instances of harassment on the part of Mr. Dill include Mr. Dill asking Plaintiff, "How does it feel for the whole yard to know you are a faggot?" Mr. Dill would also tell Plaintiff he was "stupid and worthless".

4.7 Other coworkers directly scolded Plaintiff with statements like, "Hey, I hear you like fucking boys now. What's up with that?"

4.8 One coworker, John "Last Name Unknown" threatened and harassed Plaintiff stating, "You know the guy who fell off the boat?  It was no accident.  We pushed him off."  The same employee went on to share he thought the now injured employee was a sexual predator.

4.9 In or around October 2016, and on multiple occasions throughout his employment, Plaintiff began lodging complaints about his ongoing harassment to his direct supervisors, Chris Harrop. Rather than get Mr. Dill to stop harassing Plaintiff, Mr. Harrop responded to Plaintiff  "Don't take it personally." and "That's just how Josh is.".

4.10 Mr. Harrop actively discouraged Plaintiff from complaining to Human Resources ("HR").

4.11 In October 2018, Plaintiff raised complaints of harassment to another supervisor, Dane Schmidt ("Schmidt"). Schmidt merely responded to, "Hang in there. He (Josh Dill) could

be on his way out soon. "Mr. Schmidt took no further action bey telling Plaintiff to "hang in there."

4.12 In or around October 2018, despite management's discouragement to not bring the matter to HR, Plaintiff informed HR Director, Kevin Corrigan, of the harassment in an attempt to obtain relief from the discrimination. Corrigan merely stated that Plaintiff's statements would be investigated, and Plaintiff continued to face harassment even after HR claimed to correct Mr. Dill's behavior.

4.13 After complaining to HR, Mr. Dill confronted Plaintiff for having lodged his complaint with HR and Plaintiff's work environment became more hostile. Mr. Dill told Plaintiff that "he better get used to this sort of treatment" as he is going to be "gay bashing" Plaintiff every day. With the encouragement of Mr. Dill and after learning Plaintiff brought his concerns to Human resources, other coworkers would later retaliate against Plaintiff with an onslaught of "gay bashing" and discriminatory remarks in the same manner as Mr. Dill from October of 2018 to the end of Plaintiff's employment term.

4.14 In or around January of 2019, Plaintiff took a medical leave of absence as a result of his disparate treatment at work, the resulting fear for his health and safety and the lack of remedies offered by Defendant in response to his years of complaints.

4.15 While on leave in January of 2019, Plaintiff's through his attorney, complained again that Defendant employees, Josh Dill and other coworkers continued to harass him based on his sexual orientation to Defendant CEO, Gavin Higgins.

4.16 Plaintiff provided even more detail about the ongoing harassment against him and even notified Mr. Higgins that on the day after Plaintiff went to HR "things got worse" and that Mr. Dill confronted Plaintiff about going to Human Resources, that employees told

Plaintiff he has to be "tough" to work with Defendant, and also been subjected to numerous additional harassing comments since the filing of his internal HR complaints. After the complaints to HR, Plaintiff was told by Mr. Dill "I'm going to be gay-bashing you every day" and that Mr. Dill's harassment of Plaintiff continued on an almost daily basis.

4.17 Defendant HR staff, Kevin Corrigan, responded to Mr. Dill's attorney on January 18, 2019 and stated that "we are having difficulty squaring these reports with our observations and assessment of Mr. Hennessey's work environment and experience since our previous efforts to resolve these matters."

4.18 Mr. Corrigan also declined Plaintiff suggestion that a mediation between Plaintiff and Defendant with a neutral third party take place.

4.19 On March 4, 2019, while on leave to from the hostile work environment, Defendant sent Plaintiff a letter terminating his employment effective immediately.

## V.   ADMINISTRATIVE PROCEDURES

5.1 On March 16, 2019, Plaintiff filed a Charge of Discrimination with the EEOC against Defendant for retaliation, sexual harassment and constructive discharge.

5.2 On August 14, 2019, the EEOC terminated the investigation and dismissed Plaintiff's charges.

5.3 However, on September 13, 2019, the EEOC notified the parties of the intent to reconsider the August 14th, 2019 termination and dismissal.

5.4 On September 25, 2019, the EEOC re-opened investigation into Plaintiff's claims.

5.5 On January 16, 2020, the EEOC issued a Letter of Determination ("Letter") finding reasonable cause that Plaintiff was subjected to sexual harassment and retaliation.

5.6 On March 5, 2020, Plaintiff received the EEOC's Notice of Conciliation Failure and Right to Sue.

## VI.   CAUSES OF ACTION

6.1  **Hostile Work Environment in violation of Title VII and RCW 49.60.** Defendant contributed to a hostile work environment by allowing numerous instances of employees to make unwarranted and disparaging comments to Plaintiff based on Plaintiff's sexual orientation.

6.2 **Retaliation in Violation of RCW 49.60 and Title VII.** Defendant retaliated against Plaintiff by constructively discharging Plaintiff after complaints of discrimination and harassment were raised and allowing the discriminatory work environment to continue against Plaintiff after he complained to several managers and Human Resources.

6.3 **Wrongful Termination in violation of Public Policy.**  Plaintiff was wrongfully terminated for reporting unlawful discriminatory misconduct.

## FIRST CAUSE OF ACTION

**(Hostile Work Environment under Title VII and the WLAD)**

6.4   Plaintiff incorporates and realleges paragraphs 1-6.3 as if fully set forth herein.

6.5   To establish a prima facie hostile work environment claim case under Title VII and the WLAD, the plaintiff must show that because of their protected class, they were (1) subjected to unwelcome conduct, (2) the conduct was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment, and (3) the employer is liable for the harassment that caused the hostile environment to exist.

6.6   Plaintiff did not solicit or incite the harassment he experienced in the workplace.

6.7   Plaintiff was continuously harassed from the Fall of 2016 to the Fall of 2018.

**6.8**   Defendant's management staff and HR department inadequately addressed Plaintiff's concerns by not putting procedures in place to stop the verbal harassment from Plaintiff's coworkers about Plaintiff sexual orientation and complaints to HR about being harassed.

## SECOND CAUSE OF ACTION

### (Retaliation for Participating in Protected Activities under RCW § 49.60 and Title VII)

6.9   Plaintiff realleges paragraphs 1-6.15 of the Complaint and hereby incorporates the same by reference.

6.10   Plaintiff participated in a protected activity by continually reporting conduct that he was being subjected to a hostile work environment based on his sex to his management staff, Human Resources, and ultimately the CEO.

6.11   Rather than address Plaintiff's complaints and remedy the hostile work environment, Defendant retaliated against Plaintiff by allowing Plaintiff's harassers to remain employed and continue harassing Plaintiff based on his sex and sexual orientation and sex.

**6.12**   As a result, Plaintiff had to take leave and eventually was constructively discharged by Defendant.

## THIRD CAUSE OF ACTION

### (Wrongful Termination in Violation of Public Policy)

6.13   Plaintiff realleges paragraphs 1-6.13 of the Complaint and hereby incorporates the same by reference.

6.14 Under Washington State law, wrongful termination occurs when an employee is fired in retaliation for reporting employer misconduct.

6.15 Plaintiff opposed illegal practices, making Defendant aware of its discriminatory practices.

6.16 In response to those repeated complaints, Defendant terminated Plaintiff's employment.

## VII.   PRAYER FOR RELIEF

WHEREFORE:  Plaintiffs prays for relief as follows:

7.1 An order declaring Defendant discriminated against Plaintiff

7.2 Damages for back pay, front pay, lost benefits, and all other economic losses proximately caused by Defendants;

7.3 Damages for pain and suffering, mental anguish, emotional distress, and humiliation;

7.4 Prejudgment interest in an amount to be proved at trial;

7.5 Reasonable attorney's fees and costs; and

7.6 Whatever further and additional relief the court shall deem just and equitable.

Dated this  June 2, 2020.

/s/*Nolan Lim*
Nolan Lim, WSBA #36830
Attorneys for Plaintiff
1111 3rd Ave. Suite 1850
Seattle, WA 98101
Office: (206) 774-8874
NOLAN@NOLANLIMLAW.COM